UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>WILLIAMS REFINING AND MARKETING, LLC,<br><br>Defendant. | Civil Action No. |

COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Environmental Protection Agency ("EPA"), files this complaint pursuant to the Clean Air Act, 42 U.S.C. §§ 7401-7671q, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., and the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 et seq., and alleges as follows:

NATURE OF ACTION

1. This is a civil action brought under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), against defendant Williams Refining and Marketing, LLC ("Williams"), for the assessment of civil penalties for violations of the National Emissions Standard for Hazardous Air Pollutants for Benzene Waste Operations, 40 C.F.R. Part 61, Subpart FF, promulgated pursuant to Section 112(d) of the CAA, 42 U.S.C. § 7412(d), and assessment of civil penalties for violations of 40 C.F.R. Part 60, Subpart GGG (Standards of Performance for Equipment

Leaks of VOC in Petroleum Refineries). This is also a civil action brought under Section 3008 of RCRA, 42 U.S.C. 6928, for the assessment of civil penalties for the storage of Hazardous Waste without a RCRA permit or proper exemption, in violation of Section 3005 of RCRA, 42 U.S.C. § 6925, and under Section 311(b)(7) of the CWA for the assessment of civil penalties for the discharge of oil into navigable waters of the United States in violation of the requirements of Section 311(b) of the CWA, as amended by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 1321(b). The violations alleged in the Complaint occurred at the Refinery previously owned and operated by Williams in Memphis, Tennessee.

JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355(a), Section 113(b) of the CAA, and Section 311(b) of the CWA.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c), and 1395, Section 113(b) of the CAA, and Section 311(b)(7) of the CWA, because the alleged violations occurred at the Refinery that is located in this District.

NOTICE TO STATE

4. The United States has given notice of the commencement of this action to the appropriate state air pollution control agency for the State of Tennessee pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

DEFENDANT

5. Williams Refining and Marketing, LLC is a Delaware Limited Liability corporation registered to conduct business in the State of Tennessee.

6. Williams owned and operated a petroleum refinery located at 543 Mallory Ave., Memphis, Tennessee (the "Refinery") from the mid-1980's until March 2003.

STATUTORY AND REGULATORY BACKGROUND

Clean Air Act

7. Section 112 of the Clean Air Act, 42 U.S.C. § 7412, requires EPA to promulgate emission standards for certain categories of hazardous air pollutants ("National Emission Standards for Hazardous Air Pollutants" or "NESHAP").

8. Benzene is a hazardous air pollutant. 42 U.S.C. § 7412(b)(1); 40 C.F.R. §61.01(a).

9. Pursuant to Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(d), EPA promulgated the Benzene Waste Operations NESHAP. Those regulations are set forth at 40 C.F.R. Part 61, Subpart FF. Pursuant to 40 C.F.R. § 61.340(a) the provisions of 40 C.F.R. Part 61, Subpart FF apply to petroleum refineries.

10. At relevant times, the Refinery was subject to the Benzene Waste Operations NESHAP, 40 C.F.R. Part 61, Subpart FF.

11. Pursuant to 40 C.F.R. § 61.05(c), the owner or operator of a facility is prohibited from operating an existing source, subject to a NESHAP standard, in violation of the standard, except under a waiver or exemption granted pursuant to the Clean Air Act. The Refinery was not granted a waiver or exemption from the Benzene Waste Operations NESHAP.

12. Pursuant to Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(b), EPA promulgated the Standards of Performance for Equipment Leaks of VOC in Petroleum

Refineries at 40 C.F.R. Part 60, Subpart GGG, and the National Emission Standards for Hazardous Air Pollutants from Petroleum Refineries at 40 C.F.R. Part 63, Subpart CC.

13. Pursuant to 40 C.F.R. § 60.480, the Refinery has numerous process units that are "affected facilities" and to which 40 C.F.R. Part 60, Subpart VV applied at times relevant to this complaint. At relevant times, the Refinery also had as many as ten process units subject to 40 C.F.R. Part 60, Subpart GGG. The Refinery's remaining refinery process units were subject to 40 C.F.R. Part 63, Subpart CC.

14. Pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), U.S. EPA may commence a civil action for injunctive relief and civil penalties up to $25,000 per day of violation for violations of the Clean Air Act and applicable regulations occurring prior to January 31, 1997, $27,500 for each day of violation occurring from February 1, 1997 to March 14, 2004, and $32,500 for each day of violation occurring on and after March 15, 2004.

Clean Water Act

15. Section 311(b)(3) of the Clean Water Act, as amended by OPA, prohibits the discharge of oil "into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . ." 33 U.S.C. § 1321(b)(3).

16. Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4) required EPA to promulgate regulations to determine the quantities of oil discharges which may be harmful to the public health, welfare, or the environment. Such regulations were promulgated at 40 C.F.R. Part 10.

17. Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), subjects the owner or operator of a facility from which oil is discharged in violation of Section 311(b)(3) to civil

penalties in an amount up to $25,000 per day of violation occurring prior to January 31, 1997, and $27,500 for each day of violation occurring after January 31, 1997.

Resource Conservation and Recovery Act

18. The Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 et seq., was enacted on October 21, 1976. Subtitle C of RCRA establishes a comprehensive federal regulatory program for the management of hazardous wastes from their initial generation until their final disposal. 42 U.S.C. §§ 6921-6939.

19. Section 3005 of RCRA, 42 U.S.C. § 6925, established requirements for owners or operators of hazardous waste treatment, storage or disposal facilities. EPA's implementing regulations for owners and operators are set forth at 40 C.F.R. Parts 260-270.

20. A list of solid wastes which are hazardous wastes regulated under RCRA are set forth at 40 C.F.R. Part 261, Subpart D. The standards applicable to generators of Hazardous Waste, are set forth at 40 C.F.R. Part 262.

21. On March 2, 1981, pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), and 40 C.F.R Part 271, Subpart A, EPA granted authorization to the State of Tennessee to administer and enforce a hazardous waste program in lieu of the federal program. The provisions of the Tennessee Hazardous Waste Management program, through this authorization have become requirements of Subtitle C of RCRA, and are enforceable by EPA pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), in lieu of the analogous provisions of the federal regulations. The requirements of the authorized state program are found in Tennessee Waste Management Act, T.C.A. §§ 4-5-202 and 68-212-101 et seq.

22. Section 3008(a) of RCRA, 42 U.S.C. Section 6928(a), provides that EPA may bring a civil action for injunctive relief and and/or penalties whenever the Administrator determines that a person has violated or is in violation of any requirement of Subtitle C of RCRA.

23. Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), provides that any person who violates a requirement of RCRA shall be liable for civil penalties of up to $25,000 per day for each such violation occurring prior to January 31, 1997, up to $27,500 per day for each such violation occurring on or after February 1, 1997 to March 14, 2004, and up to $32,500 for each day of violation occurring on and after March 15, 2004.

**FIRST CLAIM FOR RELIEF**
**(Failure to Manage and Treat Wastes)**

24. Plaintiff realleges each and every allegation set forth in paragraphs 1 through 23 above.

25. The regulations at 40 C.F.R. Section 61.342(b) requires each and every owner or operator of a facility subject to 40 C.F.R. Part 61, Subpart FF, and at which the total annual benzene quantity from facility waste is equal to or greater than ten megagrams per year (10Mg/yr), to manage and treat the facility waste pursuant to the requirements of 40 C.F.R. §§ 61.342(c)-(h) and 61.343-61.348.

26. At relevant times, the total annual benzene quantity from the Refinery's waste has been equal to or greater than ten megagrams per year (10Mg/yr).

27. On January 7, 1993, U.S. EPA promulgated amendments to clarify Subpart FF. See Benzene Waste Operations NESHAP, 58 Fed. Reg. 3072 (1993) (codified at 40 C.F.R. Part 61).

28. U.S. EPA gave affected facilities no later than 90 days following the effective date to come into compliance with the regulations. 58 Fed. Reg. At 3073.

29. From April 6, 1993, until the time that Williams transferred ownership of the Refinery, the Refinery failed to manage and treat its waste pursuant to the requirements of 40 C.F.R. §§ 61.342(c)-(h) and 61.348.

30. These acts or omissions constitute violations of 40 C.F.R. §§ 61.05(c) and 61.342(b) of the Benzene Waste Operations NESHAP and the Clean Air Act.

31. Pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Williams is liable for a civil penalty of up to $25,000 per day of violation occurring prior to and including January 31, 1997, and up to $27,500 per day of violation occurring after January 31, 1997 and prior to March 15, 2004.

**SECOND CLAIM FOR RELIEF**
**(Failure to Include All Waste Streams in Reports**

32. Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31 above.

33. The regulation at 40 C.F.R. § 61.357(c) and (d)(2) requires each owner or operator of a facility subject to 40 C.F.R. Part 61, Subpart FF, that has a total annual benzene quantity equal to or greater than one megagram per year (1 Mg/yr) to submit an annual report that, among other things, updates the information required in 40 C.F.R. § 61.357(a)(1)-(3).

34. The regulation at 40 C.F.R. § 61.357(a) requires each owner or operator of a facility subject to 40 C.F.R. Part 61, Subpart FF, to submit a report that includes, among other things, the total annual benzene quantity from facility waste determined in accordance with

§ 61.357(a) and a table identifying each waste stream having a flow-weighted annual average water content greater than ten percent (10%) and whether the waste stream will be controlled for benzene emissions.

35. The regulation at 40 C.F.R. § 61.357(c) and (d) requires such owner or operator to submit reports updating this information annually.

36. At relevant times, the total annual benzene quantity from the Refinery's waste has been equal to or greater than ten megagrams per year (10Mg/yr).

37. From April 6, 1993, until the time that Williams transferred ownership of the Refinery, Williams failed to identify each benzene waste stream at the Refinery having a flow-weighted annual average water content greater than ten percent (10%) in its reports submitted pursuant to 40 C.F.R. § 61.357(a) and (d).

38. As a result, Williams failed to accurately identify the total annual benzene quantity from the Refinery's waste during the relevant time period.

39. These acts or omissions constitute violations of 40 C.F.R. §§ 61.357 (a) and (d) of the Benzene Waste Operations NESHAP and of the Clean Air Act.

40. Pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Williams is liable for a civil penalty of up to $25,000 per day of violation occurring prior to and including January 31, 1997, and up to $27,500 per day of violation occurring after January 31, 1997 and prior to March 15, 2004.

**THIRD CLAIM FOR RELIEF**
**(Failure to Comply with the Equipment Standards and Monitoring, Recordkeeping, and Reporting Requirements of 40 C.F.R. Part 60, Subpart GGG)**

41. Plaintiff realleges each and every allegation set forth in paragraphs 1 through 40 above.

42. At relevant times, Williams owned and operated numerous units at the Refinery, including, but not limited to: the East Crude Unit, the Saturated Gas Unit, Sulfur Recovery Unit, the Cryogenic Unit, Isomerization Unit, and West Crude Unit. These units are “process units” that contain “equipment” as those terms are defined in 40 C.F.R. Part 60, Subpart GGG. Equipment within each of these process units (hereinafter the “Refinery GGG Process Units”) was constructed or modified after January 3, 1983, was in volatile organic compound (VOC) service, and pursuant to 40 C.F.R. § 60.592, was subject to the requirements of 40 C.F.R. §§60.482-1 through 60.482-10, 60.486, and 60.487.

43. On numerous occasions during its ownership of the Refinery, Williams failed to include shutdown dates for the Refinery GGG Process Units on its semi-annual reports as required by 40 C.F.R. § 60.487(c)(3).

44. Pursuant to 40 C.F.R. § 61.592(d), owners and operators subject to Subpart GGG are required to use Method 21 to determine the presence of leaking sources. 40 C.F.R. § 60.485(b). On numerous occasions during its ownership, Williams failed to follow the Method 21 procedures in violation of 40 C.F.R. § 60.485(b).

45. On numerous occasions during its ownership, Williams failed to monitor numerous valves in light liquid or gas/vapor service in the Refinery's GGG Process Units on a monthly or quarterly basis, in violation of 40 C.F.R. § 60.482-7.

46. At relevant times, Williams failed to equip numerous open-ended valves in the Refinery's GGG Process Units with caps, blind flanges, plugs or second valves, in violation of 40 C.F.R. § 60.482-6(a).

47. On numerous occasions during its ownership, Williams failed to perform weekly visual leak inspections on each pump in light liquid service, in violation of 40 C.F.R. 60.482-2(a)(2).

48. On numerous occasions during its ownership, Williams failed to maintain a list of identification numbers for equipment subject to Subpart GGG, in violation of 40 C.F.R. 60.486(e)(1).

49. On numerous occasions during its ownership, Williams failed to make a first attempt to repair leaks in numerous valves in the Refinery's GGG Process Units within 5 calendar days after a leak was detected in violation of 40 C.F.R. § 60.482-7(d)(2); and failed to repair leaking valves as soon as practicable, but no later than 15 calendar days, in violations of 40 C.F.R. § 60.482-07(d)(1).

50. Pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, for each violation referred to in Paragraphs 43 through 49, Williams is liable for civil penalties of up to $25,000 per day of violation occurring prior to and including January 31, 1997, and up to $27,500 per day of violation occurring after January 31, 1997 and prior to March 15, 2004.

**FOURTH CLAIM FOR RELIEF**
**(Discharge of Oil Into Navigable Waters of the United States)**

51. Plaintiff realleges each and every allegation set forth in paragraphs 1 through 50 above.

52. At relevant times, Williams leased and operated a fuel pipeline located at the Memphis Airport. On or about February 3, 2003, the pipeline ruptured and released jet fuel into a navigable water of the United States.

53. In 40 C.F.R. § 110.3, EPA defined the quantities of oil that may be harmful to the public health or welfare or environment to include discharges of oil that "[c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines . . . ." The quantity of jet fuel discharged from the pipeline operated by Williams, caused a sheen upon the navigable waters of the United States.

54. The discharge of jet fuel from the pipeline operated by Williams was in violation of Section 311(b) of the Clean Water Act, 33 U.S.C. § 1321(b). Therefore, pursuant to Section 311(b)(7)(C) of the Clean Water Act, 33 U.S.C. § 1321(b)(7)(C), and 40 C.F.R. Part 19, Williams is liable for civil penalties of up to $27,500 per day of violation.

**FIFTH CLAIM FOR RELIEF**
**(Storage of Hazardous Waste in Violation of RCRA)**

55. Plaintiff realleges each and every allegation set forth in paragraphs 1 through 54 above.

56. On or about November 5 and 6, 2002, the Refinery accumulated hazardous waste near the point of generation in a container that was not closed and the container was not marked

with the words “Hazardous Waste,” in violation of 40 C.F.R. §§ 262.34(c)(1) and 265.173(a); and the Tennessee Revised Code 1200-1-11-03(4)(e).

57. At relevant times, the Refinery was a “Small Quantity Handler of Universal Waste” within the meaning of 40 C.F.R. § 273.9, and therefore the Refinery was subject to 40 C.F.R. Part 273. On or about November 5 and 6, 2002, Williams stored “lamps” within the meaning of 40 C.F.R. § 273.5 in containers that were not structurally sound and adequate to prevent breakage, in violation of 40 C.F.R. § 273.13(d)(1); and the Tennessee Revised Code 1200-1-11.12(2)(a)(4)(i)(1).

58. The violations described in Paragraphs 56 and 57 constitute violations of Section 3005 of RCRA, 42 U.S.C. §6925, and pursuant to Section 3008(g), 42 U.S.C. § 6928(g), and 40 C.F.R. Part 19, and the applicable sections of the Tennessee Revised Code 1200-1-11, Williams is liable for civil penalties not exceeding $27,500 per day of such violations.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff United States of America respectfully requests that this Court:

1. Assess civil penalties of up to $25,000 per day for each violation by Williams of the applicable provisions of the Clean Air Act, the Clean Water Act, and the Resources Conservation and Recovery Act, that occurred prior to January 31, 1997, and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997;

2. Award the United States its costs in this action; and

3. Grant the United States such other relief as the Court deems just and appropriate.

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

S/ Susan M. Akers
SUSAN M. AKERS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Benjamin Franklin Station
Washington, D.C. 20044-7611
(202) 514-4831

JAMES K. VINES
United States Attorney
Middle District of Tennessee
United States Attorney's Office for the
Middle District of Tennessee
110 Ninth Avenue, South, Suite A961
Nashville, Tennessee 37203

OF COUNSEL:

MARLENE TUCKER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region IV
61 Forsyth St.
Atlanta, Georgia 30303-8960